IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KILPATRICK CORNELIUS MCKINNEY, #05990-509, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | CASE NOS. 2:23-cv-539-RAH 2:23-cv-595-RAH |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Kilpatrick Cornelius McKinney, a federal inmate proceeding *pro se*, has filed a motion under 28 U.S.C. § 2255 challenging his convictions and sentence in *United States v. McKinney*, Case No. 2:20-cr-103-RAH-SMD-1.[1] (*See* Doc. 1; *see also* Case No. 2:23-cv-595, Docs. 1 & 2.)[2] McKinney contends that his counsel provided constitutionally ineffective assistance by failing to (1) seek disclosure of a confidential informant's identity; (2) present an alibi defense; (3) provide McKinney with his complete work file; and (4) raise the claim on appeal that this Court did not elicit a fully articulated objection from McKinney after imposing his sentence. (*See* Docs. 1, 5 & 12; *see also* Case No. 2:23-cv-595, Docs. 1 & 2.) Upon consideration of the record, and for the following reasons, McKinney's § 2255 motion will be **DENIED** without an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2255 Proceedings for the United States District Courts*.

---

[1] All citations to the underlying criminal action will be denoted as Cr. No.

[2] On October 24, 2023, the Court consolidated Case Nos. 2:23-cv-539-RAH (the lead case) and 2:23-cv-595-RAH (the member case). (Doc. 3.) All citations to the civil docket refer to the lead case unless otherwise specified. Additionally, any reference herein to McKinney's "§ 2255 motion" refers collectively to the § 2255 motions in both cases.

## BACKGROUND

### A.     The Underlying Offense

In November 2018, members of the Tallapoosa County Narcotics Task Force executed an arrest warrant for McKinney at a trailer home in Kellyton, Alabama. (Doc. 7-1 at 4; Cr. No. 144 at 4.) The arrest warrant was obtained based on a controlled buy between McKinney and a confidential informant in October 2018. (Doc. 7-2.) Upon executing the warrant, officers located McKinney hiding in the closet of the master bedroom and arrested him without incident. (Doc. 7-1 at 4; Cr. No. 144 at 4.) Upon entering the home, officers smelled marijuana and observed drug paraphernalia in plain view. (*Id.*) After obtaining a warrant to search the home, officers found two firearms; distribution quantities of methamphetamine, marijuana, and cocaine; and other items associated with narcotics distribution, including digital scales, baggies, and a vacuum sealer. (*Id.*) The two firearms and drugs were found inside the master bedroom in which McKinney was hiding when officers arrived. (Doc. 7-1 at 6; Cr. No. 144 at 6.) In that same bedroom, officers found items belonging to McKinney, including a package and mail addressed to McKinney at the Kellyton residence. (*Id.*) Officers also found prescription pill bottles with McKinney's name on them located in a bathroom attached to the master bedroom. (Doc. 7-1 at 7; Cr. No. 144 at 7.) Additionally, McKinney's driver's license listed the Kellyton residence as McKinney's home address. (*Id.*)

### B.     The Indictment and Trial

On July 14, 2020, a grand jury in the Middle District of Alabama returned a five-count Indictment against McKinney. (Doc. 7-3; Cr. No. 1.)

Count One alleged that, on or about November 16, 2018, within the Middle District of Alabama, McKinney, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed firearms and ammunition in and affecting interstate and foreign commerce, that is: a Taurus, model 38 special, .38 caliber handgun and a Sig Sauer, model P238, .380 caliber handgun and live ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Doc. 7-3 at 1; Cr. No. 1 at 1.)

Count Two alleged that, on or about November 16, 2018, within the Middle District of Alabama, McKinney knowingly and intentionally possessed with the intent to distribute a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). (Doc. 7-3 at 2; Cr. No. 1 at 2.)

Count Three alleged that, on or about November 16, 2018, within the Middle District of Alabama, McKinney knowingly and intentionally possessed with the intent to distribute a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1). (*Id.*)

Count Four alleged that, on or about November 16, 2018, within the Middle District of Alabama, McKinney knowingly and intentionally possessed with the intent to distribute a mixture and substance containing a detectable amount of cocaine hydrochloride, commonly referred to as "cocaine powder," a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). (Doc. 7-3 at 2–3; Cr. No. 1 at 2–3.)

Count Five alleged that, on or about November 16, 2018, within the Middle District of Alabama, McKinney knowingly used and carried a firearm, during and in relation to, and possessed a firearm in furtherance of, a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, a violation of 21 U.S.C. § 841(a)(1) as charged in Counts Two, Three, and Four of the Indictment, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 7-3 at 3; Cr. No. 1 at 3.)

McKinney pleaded not guilty (Cr. No. 12) and proceeded to trial. On October 26, 2021, the jury found McKinney guilty as charged on all five counts in the Indictment. (Doc. 7-4; Cr. No. 106.)

### C.     Sentencing

McKinney was sentenced on April 5, 2022. (Doc. 7-6; Cr. No. 140.) During the hearing, the Court granted McKinney's motion for a downward variance because his criminal history was overstated. (Doc. 7-6 at 16; Cr. No. 140 at 16.) The Court then sentenced McKinney to a total term of 280 months of imprisonment, which consisted of a 220-month term on Counts One, Two, and Four and a 60-month term on Count Three, all

3

to run concurrently with each other, and an additional 60-month term on Count Five, to be served consecutively to all other counts and cases. (Doc. 7-6 at 18; Cr. No. 140 at 18.) The Court imposed its final judgment on the date of sentencing. (Doc. 7-7; Cr. No. 127.)

### D.     McKinney's Appeal

McKinney appealed his convictions and sentence. (Cr. No. 132.) On April 7, 2023, the Eleventh Circuit issued an opinion affirming this Court's judgment. (Doc. 7-1; Cr. No. 144.) The Eleventh Circuit's mandate issued on May 8, 2023. (Doc. 7-8; Cr. No. 145.)

## THE § 2255 MOTION

On September 1, 2023, McKinney, proceeding *pro se*, timely filed the instant motion under 28 U.S.C. § 2255. (Doc. 1.) On September 13, 2023, the Court issued an Order directing McKinney to file an amendment to his § 2255 motion clearly identifying the grounds on which he claims he is entitled to relief and stating specific facts that support each of his claims. (Doc. 2.) On October 2, 2023, McKinney filed another § 2255 motion under a different case number. (*See* Case No. 2:23-cv-595, Doc. 1.) On October 24, 2023, the Court issued an Order consolidating McKinney's two § 2255 actions. (Doc. 3.) Accordingly, McKinney's two § 2255 motions are addressed collectively herein.

McKinney asserts that his counsel provided ineffective assistance by failing to (1) seek disclosure of the confidential informant's identity; (2) present an alibi defense; (3) provide McKinney with his complete work file; and (4) raise the claim on appeal that this Court did not elicit a fully articulated objection from McKinney after imposing his sentence. (*See* Docs. 5 & 12; *see also* Case No. 2:23-cv-595, Docs. 1 & 2.) On November 27, 2023, and December 28, 2023, the Government filed responses in opposition with accompanying exhibits. (Docs. 7 & 16.) In December 2023 and January 2024, McKinney filed replies. (Docs. 13, 18 & 20.) On June 29, 2025, McKinney filed supplemental evidence in support of one of his claims.[3] (Doc. 22.) The § 2255 motion is now ripe for consideration.

---

[3] The Court previously informed McKinney that he must file any reply to the Government's filings by December 18, 2023, and "[a]ny documents or evidence filed after this date [would] not be considered by

## DISCUSSION

### A. General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may obtain relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B. Ineffective Assistance of Counsel Claims

A claim of ineffective assistance of counsel is evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). An attorney is considered constitutionally ineffective only if (1) his or her "performance was deficient" and (2) that "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *see also Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see Chandler*, 218 F.3d at 1315 ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."); *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) ("Even if

---

the Court except upon showing exceptional circumstances." (Doc. 10 at 1.) McKinney was later permitted to file an additional reply by January 25, 2024. (Doc. 17.) Upon review of McKinney's June 2025 supplemental filing (Doc. 22), the Court finds that McKinney has not demonstrated exceptional circumstances warranting consideration of such filing. Regardless, the evidence submitted by McKinney fails to establish ineffective assistance of counsel or otherwise change the outcome of this case.

in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."). Scrutiny of counsel's performance is highly deferential, and the Court indulges a strong presumption that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314.

Under the prejudice component, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. However, the prejudice prong does not focus only on the outcome; rather, to establish prejudice, the movant must show that counsel's deficient representation rendered the results of the proceeding fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").

Unless the movant satisfies both prongs of the *Strickland* test, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *see Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

      i.    **Failure to Seek Disclosure of Confidential Informant's Identity**

McKinney first contends that his counsel rendered ineffective assistance by failing to "investigate or request for the disclosure of the informer's identity, in order to challenge the validity of the arrest warrant." (Case No. 2:23-cv-595, Doc. 2 at 1 (cleaned up).) McKinney argues that this failure "prevented [him] from proving that the alleged controlled buy did not happen" and that "the basis for the arrest warrant was fraudulent." (*Id*. (cleaned up).) McKinney further claims that, due to this failure, he "was prejudiced from challenging the arrest warrant, because the informer was the sole witness in a position to amplify or contradict the alleged controlled buys." (*Id*. (cleaned up).)

In support, McKinney cites *Roviaro v. United States*, 353 U.S. 53 (1957), which provides generally that, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential

6

to a fair determination of a cause, the [Government's privilege to withhold from disclosure the identity of a confidential informant] must give way." *Id*. at 60–61. However, the Supreme Court has since explained that *Roviaro* "involved the informer's privilege, not at a preliminary hearing to determine probable cause for an arrest or search, but at the trial itself where the issue was the fundamental one of innocence or guilt." *McCray v. State of Ill.*, 386 U.S. 300, 309 (1967). The Supreme Court "has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause for an arrest or search." *Id*. at 312.

In this case, as the Government correctly points out, McKinney was not charged with any criminal activity arising from the controlled buy involving the confidential informant. He was charged based on the subsequent search of his residence and the multiple firearms and drugs found there. (*See* Doc. 7-3; Cr. No. 1.) There is nothing to suggest that the confidential informant was present during the execution of the search warrant or that either the confidential informant or controlled buy were a "fundamental issue" at trial. Indeed, nothing in the record supports a finding that disclosure of the informant was necessary to establish a defense at trial. Although McKinney argues that the informant's identity would instead "be used in a preliminary hearing to determine probable cause" (doc. 13 at 1), as the Supreme Court explained in *McCray*, "an informer's identity need [not] always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause." 386 U.S. at 312.

Because McKinney has failed to establish a reasonable probability that a motion to disclose the confidential informant's identity would have succeeded, he cannot satisfy the prejudice prong of an ineffective assistance of counsel claim. *See Campana v. Sec'y, Dep't of Corr.*, No. 18-13236-K, 2019 WL 3545591, at *1 (11th Cir. Jan. 31, 2019) (holding petitioner failed to establish prejudice based on counsel's failure to move for disclosure of confidential informants' identities because, in part, petitioner "did not establish a reasonable probability that a motion to disclose would have succeeded"); *Jackson v. Sec'y, Fla. Dep't of Corr.*, No. 3:19-cv-923-MMH-LLL, 2022 WL 2209893, at *11 (M.D. Fla. June 21, 2022) (holding petitioner's counsel was not ineffective for failing to argue on

7

appeal that the trial court erred by refusing to disclose confidential informant's identity because petitioner was not charged with any criminal activity arising from the controlled buy and neither the controlled buy nor the confidential informant was a feature of trial); *United States v. Turner*, No. 5:02-CR-32 RH, 2006 WL 290515, at *6 (N.D. Fla. Jan. 4, 2006) (holding confidential informant's identity was not required to be disclosed where, among other factors, the controlled buy that was the basis for the search was not charged).

Accordingly, this claim is due to be denied without an evidentiary hearing. *See Dickson v. Wainwright*, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel.") (citation omitted).

### ii.    Failure to Present Alibi Defense

Concerning the choices by a criminal defendant's legal counsel, the Supreme Court has explained that:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Wiggins v. Smith*, 539 U.S. 510, 521–522 (2003) (quoting *Strickland* at 690–691).

In his motion, McKinney contends that his counsel provided ineffective assistance by failing to present an "alibi defense." (Case No. 2:23-cv-595, Doc. 2 at 1–2.) Specifically, he argues that his counsel "was given an affidavit by Cadario Smith concerning the firearms that were discovered in the home," counsel's "decision not to investigate or present the alibi defense to the jury was not based on any sound or strategic choice," and

8

counsel's "failure to investigate or speak to Cadario Smith about the affidavit was clearly unreasonable under the circumstances of the case." (*Id*. (cleaned up).)

McKinney's trial counsel, Preston Presley, was directed to file an affidavit addressing the ineffective assistance of counsel claims presented against him. He has provided a response. In his response, Mr. Presley states that Smith is McKinney's brother, that he did communicate with Smith, and that he sent Smith an affidavit to sign but that Smith chose not to participate in the trial for his own personal reasons. While Mr. Presley does not directly address the issue of whether an executed affidavit was provided by Smith, it is difficult to ascertain precisely what action McKinney claims Mr. Presley should have taken with the affidavit. That is, should Mr. Presley have offered it into evidence at trial? Call Mr. Smith as a witness? Or should he have done something else? McKinney does not say, other than to *suggest* that the affidavit should have been presented.

McKinney's claim on this issue fails for several reasons. First, the record shows that Mr. Presley did in fact present an alibi defense. In this regard, at trial, McKinney took the stand and testified that the firearms may have belonged to a family member, Cadario Smith. (Doc. 7-10 at 176–177, 188; Cr. No. 141 at 176–177, 188.) Accordingly, the very premise for McKinney's assertion is incorrect.

Although McKinney provided testimony about an alibi at trial, he asserts that despite his testimony "the jury chose to disbelieve [his] allegation without seeing or hearing about the affidavit from Cadario Smith." (Doc. 13 at 2.) Thus, McKinney apparently believes that Mr. Presley should have offered the Smith affidavit into evidence. McKinney provides no legal basis or case law showing how such an affidavit, if it ever was executed and returned by Smith, would have been admitted into evidence at trial. Such an affidavit clearly constituted hearsay and therefore would not have been admitted into evidence, especially since McKinney seems to suggest that it would have been offered for the truth of the matter asserted. *See United States v. Jiminez*, 564 F.3d 1280, 1287 (11th Cir. 2009) ("Hearsay, of course, 'is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'")

9

(quoting Fed. R. Evid. 801(c)). Mr. Presley therefore cannot be faulted for making the strategic decision not to offer into evidence an affidavit that clearly was inadmissible.

And to the extent McKinney suggests that Mr. Presley should have called Mr. Smith as a witness, McKinney provides no affidavit, testimony, or other evidence that Mr. Smith was available to testify and would have testified to ownership and possession of the firearms at issue, let alone provided testimony in such a compelling manner so as to completely disconnect McKinney from the firearms despite their location in McKinney's bedroom. In other words, McKinney's claim amounts to nothing more than unsupported conclusory assertions that are completely void of supporting evidence. *See Rosin v. United States*, 786 F.3d 873, 878 (11th Cir. 2015) ("It is well-settled that the district court is not required to grant an evidentiary hearing when the defendant's claims . . . are grounded upon generalizations that are unsupported by the record evidence.") (citations omitted). *See also Killen v. United States*, No. 21-10888-E, 2021 WL 7159181, at *5 (11th Cir. Sept. 8, 2021) ("Conclusory claims, unsupported by facts or argument, cannot entitle a movant to § 2255 relief.") (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)).

McKinney also fails to satisfy the prejudice prong of an ineffective assistance of counsel claim, as he has not demonstrated a reasonable probability that the purported affidavit testimony, if admitted, would have changed the outcome of his trial. *See Strickland*, 466 U.S. at 694. As noted above, McKinney fails to provide any detail regarding the contents of the purported affidavit. He merely states that it was "an affidavit by Cadario Smith concerning the firearms that were discovered in the home" but wholly fails to explain how that affidavit would have affected the outcome of the trial. (*See* Case No. 2:23-cv-595, Doc. 2 at 1–2.) Even if the Court were to assume that Mr. Smith claimed ownership of the firearms in the purported affidavit, that fails to establish the requisite reasonable probability.

To support a conviction under 18 U.S.C. § 922(g)(1), "the government must prove that (1) the defendant 'was a convicted felon, (2) he knowingly possessed a firearm, and (3) the firearm was in or affected interstate commerce.'" *United States v. Hill*, 792 F. App'x 753, 754 (11th Cir. 2019) (quoting *United States v. Howard*, 742 F.3d 1334, 1341 (11th

10

Cir. 2014)). "Possession may be actual or constructive, joint or sole." *United States v. Jones*, 284 F. App'x 771, 772 (quoting *United States v. Gunn*, 369 F.3d 1229, 1234 (11th Cir. 2004)). "To establish constructive possession, evidence must demonstrate that the defendant exercised ownership, dominion, or control over the firearm or ammunition, or the *property* concealing the firearm or ammunition." *Id*. (emphasis added). The defendant need not have the firearm on or near his person in order to constructively possess it, *see United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004), nor does he have to be the owner of the firearm.

Here, the record demonstrates that law enforcement officers found the two firearms in the same master bedroom of the Kellyton residence in which McKinney was hiding when officers arrived. (Doc. 7-1 at 6; Cr. No. 144 at 6.) In that same master bedroom, officers found numerous items belonging to McKinney, including a package and mail addressed to him at the Kellyton residence. (*Id*.) Officers also found prescription pill bottles with McKinney's name on them located in a bathroom attached to the master bedroom. (Doc. 7-1 at 7; Cr. No. 144 at 7.) McKinney's driver's license also listed the Kellyton residence as McKinney's home address. (*Id*.) To the extent Mr. Smith *may* have claimed ownership of the guns found at the Kellyton residence—which is wholly unclear from the record—that fact would not preclude a jury from finding that McKinney had possession of the firearms found in the bedroom.

"[P]ossession need not be exclusive . . . and can be proven circumstantially by ownership, dominion, or control over the premises [in] which the [item] is located." *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989) (although defendant did not have exclusive control over her house, several other individuals lived there, and defendant had returned from a trip only minutes before the execution of the search warrant, the facts were sufficient for a jury to find that she constructively possessed drugs found in the house because she exercised dominion and control over the house); *United States v. Montes-Cardenas*, 746 F.2d 771, 778 (11th Cir. 1984) ("Constructive possession may be shared with others, and can be established by circumstantial or direct evidence."); *accord United States v. Marx*, 635 F.2d 436, 440 (5th Cir. 1981); *see United States v. Faust*, 456 F.3d

11

1342, 1346 (11th Cir. 2006) (holding evidence was sufficient to show defendant had constructive possession of drugs in apartment even though his wife also lived there and was the sole signatory on the renewal lease).

Regardless of whether Mr. Presley acted reasonably concerning the purported Smith affidavit, McKinney has not shown a reasonable probability that offering the affidavit into evidence at trial would have changed the outcome of the trial. Accordingly, McKinney has once again failed to establish prejudice, and this claim is due to be denied without an evidentiary hearing.

### iii. Failure to Provide Complete Work File

McKinney next contends that his counsel provided ineffective assistance by failing to provide McKinney with "counsel's work file that was generated and pertains to [McKinney's] trial defense," which "prejudiced [his] ability to challenge the counsel's performance." (Case No. 2:23-cv-595, Doc. 2 at 2.) McKinney later admits that he received "copies of the trial and sentencing proceedings" but claims he did not receive any "case notes" or "investigation notes" that "were needed to adequately challenge the trial counsel's representation." (Doc. 13 at 2; *see also* Cr. No. 153.) Mr. Presley disputes the assertion, stating that he provided file documents to McKinney and his mother, and that McKinney has admitted that the documents were lost during his transits between facilities.

Once again, even assuming Mr. Presley acted unreasonably by failing to provide McKinney with his "case notes" or "investigation notes"—assuming that there were case or investigatory notes to give—McKinney has failed to establish that he was prejudiced by this failure. Other than these conclusory statements, McKinney wholly fails to explain *how* he was prevented from challenging his counsel's performance—when he was able to timely file the instant § 2255 motion doing just that—or what claims of ineffective assistance of counsel may have been raised other than those in the instant motion. Indeed, the fact that McKinney has filed the instant motion refutes his vague claim that he is unable to challenge his counsel's performance.

Accordingly, McKinney has again failed to establish prejudice, and this claim is due to be denied without an evidentiary hearing.[4]

### iv. Failure to Raise Objection Issue on Appeal

McKinney contends that his counsel rendered ineffective assistance by failing to raise the claim on appeal that this Court did not elicit a fully articulated objection from McKinney after imposing his sentence. (Doc. 5.) He claims that this failure "clearly perjudice [sic] [his] ability to object" and that he "would have objected to the . . . imposed sentence of special conditions of supervise release," specifically that he participate in substance abuse programs and mental health treatment and contribute to those costs. (*Id.* at 2–3.)

At McKinney's sentencing hearing, the following colloquy took place:

> THE COURT: The sentence will now be stated, but you will have a final chance to make legal objections before the sentence is imposed.
>
> Having considered and consulted the sentencing guidelines and the arguments of counsel and evaluated the reasonableness of a sentence through the lens of 18 U.S.C. 3553, it is the order, judgment, and decree of the Court that the defendant is committed to the custody of the Federal Bureau of Prisons to be imprisoned for a term of 280 months.
>
> This sentence consists of 220 months on each of Counts 1, 2, and 4, 60 months on Count 3, all to be served concurrently with each other, and then an additional 60 months on Count 5 to be served consecutively to all other counts and cases. [ ]
>
> Upon release from imprisonment, you shall be placed on supervised release for a term of three years. [ ] The Court also orders the following special conditions: You shall participate in a program approved by the United States

---

[4] *See Rosin*, 786 F.3d at 878 ("It is well-settled that the district court is not required to grant an evidentiary hearing when the defendant's claims . . . are grounded upon generalizations that are unsupported by the record evidence.") (citations omitted). *See also Killen*, 2021 WL 7159181, at *5 ("Conclusory claims, unsupported by facts or argument, cannot entitle a movant to § 2255 relief.") (citing *Tejada*, 941 F.2d at 1559); *Adams v. United States*, No. 19-11068-C, 2019 WL 4643730, at *1 (11th Cir. Aug. 20, 2019) (denying Certificate of Appealability for vague and conclusory ineffective assistance of counsel claims where § 2255 petitioner failed to identify "how different conduct would have affected the result of her proceeding").

13

Probation Office for substance abuse as directed, which may include testing to determine whether you have reverted to the use of drugs. You shall contribute to the cost of any treatment based on your ability to pay and the availability of third-party payments. You shall participate in a mental health treatment program by the United States Probation Office as directed and contribute to the cost based on your ability to pay and the availability of third-party payments. [ ] Mr. Andreu, are there any objections to the sentence or the manner in which I pronounced it?

MR. ANDREU: No, Your Honor.

THE COURT: Mr. Presley?

MR. PRESLEY: No, Your Honor.

THE COURT: Mr. McKinney, you have a right to appeal. To the extent you wish to invoke those rights, you'll have 14 days from today to do so. We'll have the judgment out today. Mr. Presley, before you leave from your client today, will you remind him one last time of his appeal rights?

MR. PRESLEY: Yes, Your Honor.

THE COURT: Counsel, is there anything else I need to take up this afternoon?

MR. ANDREU: No, sir.

THE COURT: Mr. Presley?

MR. PRESLEY: No, Your Honor.

THE COURT: Is there a forfeiture allegation?

MR. ANDREU: Yes, Your Honor. The government would ask that the – there should be a preliminary order of forfeiture. We'd ask that be made final and part of the oral pronouncement of sentence and part of the final judgment.

THE COURT: Okay. I'll grant that request. The sentence is imposed as stated. Mr. McKinney, you're remanded to the custody of the marshal. Best of luck to you. We're adjourned. Thank you, counsel.

(Doc. 7-6 at 18–21; Cr. No. 140 at 18–21.)

This colloquy demonstrates that the Court elicited objections after pronouncing McKinney's sentence and special conditions of supervised release with which McKinney now takes issue. Thus, the Court did in fact give McKinney an opportunity to object to the special conditions of supervised release. And further, McKinney provides no details about what objections should have been lodged, or why such objections were well-founded in the law or in fact, and why these objections would have been sustained by the court. McKinney was not prejudiced by his counsel's failure to raise this issue on appeal. Accordingly, this claim is due to be denied without an evidentiary hearing.

      v.    **Actual Innocence**

In a supplemental filing, McKinney makes an "actual innocence [claim] based on newly discovered evidence of misconduct." (Doc. 25.) He argues that he recently discovered that a law enforcement officer, Ben Whitley, has been involved in "misconduct" and that this misconduct undermines the validity of the probable cause warrant that Whitley signed when he sought to arrest McKinney on a state charge for selling marijuana to a confidential informant. McKinney describes the misconduct as "dishonest, unrelated cases, including falsification of information, unreliable statements, and misconduct in securing warrants." (Doc. 25 at 2.)

The Government has filed a response. It argues that the issue is procedurally defaulted because it was not raised in a direct appeal. The Government further argues that McKinney is misframing the issue as one of "actual innocence" because McKinney does not use this alleged misconduct to argue that he is actually innocent of the counts of conviction in his federal criminal case. Instead, what McKinney is calling actual innocence is really a meritless attack to the probable cause affidavit that Whitley submitted in November 2018 on an unrelated state marijuana charge. It was based on that warrant that multiple officers from a county narcotics task force arrested McKinney at a trailer home in November, and during that arrest, new criminal conduct was observed by law enforcement. Based on those observations, Officer Richard Holsten of the Alabama Law Enforcement Agency, not Whitley, sought and obtained a warrant to search the home. During that search, officers found firearms, distribution quantities of methamphetamine, marijuana, cocaine,

digital scales, baggies and a vacuum sealer. McKinney was later indicted on federal charges associated with the controlled substances and firearms found during that search and was later found guilty by a federal jury. Whitley did not procure the search warrant for the home and did not testify at trial. Thus, according to the Government, Whitley has no connection to the federal charges on which McKinney was convicted. The Government also notes that the recent issues involving Whitley became known in mid-2025 and concern his storage of, and accounting for, case evidence at his home and in his work desk and his recent use of illicit drugs, all of which occurred after the probable cause affidavit signed by Whitley in an unrelated case.

McKinney is not entitled to relief on this claim.[5] While he characterizes it as an "actual innocence" claim, he does not assert that he was actually innocent of the conduct for which he was found guilty by a federal jury. Further, Whitley did not testify at the trial. As such, there was nothing about Whitley or his credibility that impacted the jury's verdict in the underlying criminal case against McKinney. Claims of actual innocence can proceed only if the petitioner can show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 329 (1995). And here, McKinney has not made a colorable showing of actual innocence.

Whitley's only involvement in the string of events involving the federal criminal case against McKinney was his initial involvement in 2018 in procuring a warrant to arrest McKinney on a state marijuana charge when McKinney allegedly sold marijuana to a confidential informant. It was during law enforcement's arrest of McKinney on that warrant that new criminal conduct involving McKinney was discovered. After that discovery, Officer Holston of ALEA obtained a search warrant of the trailer home, and it was based on the results of that search that McKinney was later federally indicted. So, when properly characterized, McKinney's claim here is that the newly discovered evidence goes to a credibility issue of a law enforcement officer with a remote and tenuous connection to the chain of events that ultimately led to a federal indictment. But the

---

[5] The Court will presume that this claim is not procedurally defaulted.

tenuous nature of McKinney's claim does not show how Whitley's probable cause testimony did not evidence the lack of probable cause, or how that would have negated or voided the later procured search warrant obtained by Officer Holsten, or how any suppression motion would have been successful, or how the federal charges against McKinney would have been dismissed.[6]  This connection is far too tenuous to have had any impact on the criminal proceedings here.  Again, Whitley did not testify at the trial against McKinney and he did not provide the probable cause affidavit which lead to the search of the trailer home that resulted in the discovery of the evidence used against McKinney at trial.  McKinney has not alleged facts which if proven show that he would be entitled to relief on this claim.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** and **ADJUDGED** that Petitioner Kilpatrick McKinney's 28 U.S.C. § 2255 motion is **DENIED** without an evidentiary hearing, and this case is **DISMISSED** with prejudice.

DONE on this the 20th day of February 2026.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE

---

[6] McKinney does not make a Brady/Giglio claim that the Government withheld evidence, nor could he, since knowledge of Whitley's alleged misconduct only became known in mid-2025, which was well after McKinney's federal criminal case had concluded.